# STATE OF MICHIGAN

# COURT OF APPEALS

BRUCE WHITMAN,

Plaintiff-Appellee,

v

CITY OF BURTON and CHARLES SMILEY,

Defendants-Appellants.

FOR PUBLICATION
July 9, 2015

No. 294703
Genesee Circuit Court
LC No. 08-087993-CL

ON SECOND REMAND

Before: O'CONNELL, P.J., and SAAD and BECKERING, JJ.

BECKERING, J. (*dissenting*).

As noted by the majority, this matter is before the Court for a third time. Once again, I must disagree with the majority opinion. In addition to my conclusion that *Wurtz v Beecher Metro Dist*, 495 Mich 242; 848 NW2d 121 (2014), does not impact the outcome of this case, I disagree with the majority's analysis regarding the requirements of the Whistleblower's Protection Act (WPA), MCL 15.361 *et seq.*, and their attempt to engraft language into the act that does not exist. In its first opinion in this case, the majority held that "a critical inquiry" in determining the validity of a claim under the WPA "is whether the employee acted in good faith and with a desire to inform the public on matters of public concern. . . ." *Whitman v City of Burton*, 293 Mich App 220, 230; 810 NW2d 71 (2011) (quotation marks and citations omitted). As the Michigan Supreme Court noted at the time of its first remand in this matter, "[n]othing in the statutory language of the WPA addresses the employee's motivation for engaging in protected conduct, nor does any language in the act mandate that the employee's *primary* motivation be a desire to inform the public of matters of public concern." *Whitman v City of Burton*, 493 Mich 303, 306; 831 NW2d 223 (2013).[1] Yet the majority continues to focus on

---

[1] The Supreme Court further noted that "[r]ather, the plain language of MCL 15.632 controls, and we clarify that a plaintiff's motivation is not relevant to the issue whether a plaintiff has engaged in protected activity and that proof of primary motivation is not a prerequisite to bringing a claim. To the extent that *Shallal* [*v Catholic Social Servs of Wayne Co*, 455 Mich 604; 566 NW2d 571 (1997)] has been interpreted to mandate those requirements, it is disavowed." *Whitman v City of Burton*, 493 Mich 303, 306; 831 NW2d 223 (2013); See also *Id*,

-1-

plaintiff Bruce Whitman's motivations, going so far as to call him "selfish." Perhaps it is to justify their decision to engraft into the plain language of the WPA another requirement that, in addition to proving that the employee reported or was about to report a "violation or a suspected violation of a law or regulation or rule," the plaintiff must take the additional step of proving that the law or regulation or rule at issue is one that is deemed to "advance the public interest." Markedly absent from MCL 15.362 is any requirement that a court or jury determine whether the law at issue, as enacted by the legislative body, actually advances the public interest, or whether "the plaintiff's conduct objectively promoted the public interest." Because I cannot countenance an attempt to judicially impose a requirement into the WPA where no statutory basis exists, especially one that appears to be nothing more than an attempt to get around our Supreme Court's last prohibition against using the plaintiff's motives as a factor to determine whether he or she has engaged in protected conduct, I dissent.[2] See *Whitman*, 493 Mich at 319.

The primary purpose of the Supreme Court's latest remand order in this case, *Whitman v City of Burton*, 497 Mich 896 (2014), is to enable this Court to determine whether *Wurtz v Beecher Metro Dist*, 495 Mich 242; 848 NW2d 121 (2014), impacts the outcome of the case. In *Wurtz*, 495 Mich at 244, our Supreme Court evaluated whether the WPA applies to a fixed-term contract employee "whose term of employment has expired without being subject to a specific adverse employment action identified in the *WPA* and who seeks reengagement for a new term of employment . . . ." Noting that such employee "occupies the same legal position as a prospective employee," and that the WPA, "by its express language, only applies to current employees" and "offers no protection to prospective employees," the Court concluded that the WPA has no application. *Id*. The Supreme Court made clear, however, that its ruling did not affect the rights of at-will employees and others who enjoy an ongoing employment expectation of at least not being fired or otherwise discriminated against for improper reasons violative of the WPA. *Id* at 256-257. It further clarified that its ruling did not address contracts with a "renewal clause imposing some obligation or duty on the employer to act." *Id*. at 257, n 32.

---

at 313, 318-319, 321. As the Supreme Court pointed out in its opinion, *Id*. at 314-319, and as I addressed in my dissenting opinion, *Whitman*, 293 Mich App at 232-250, *Shallal* and related caselaw focused on *causation* and the failure to establish a causal connection between a plaintiff's firing and the protected activity.

[2] As noted by the Supreme Court in *Whitman*, 493 Mich at 230, "[t]o do so would violate the fundamental rule of statutory construction that precludes judicial construction or interpretation where, as here, the statute is clear and unambiguous." The fact that the majority's new "advance the public interest" requirement is seen nowhere else in the caselaw, from what I could ascertain, further supports the conclusion that the majority is overstepping its bounds. As the Supreme Court noted, the plain and unambiguous language of the WPA, *as is*, "meets its objective of protecting the public." *Id*. at 318.

-2-

I respectfully dissent from the ruling of my colleagues because I would find that Whitman's employment situation is considerably different than and distinguishable from that of the plaintiff in *Wurtz*, and that Whitman was protected by the WPA. Unlike the plaintiff in *Wurtz*, Whitman was not a fixed-term employee whose contract was allowed to expire in accordance with the terms of the agreement. Instead, he was a full-time, 32 ½-year employee with the City of Burton who enjoyed an "indefinite" term of employment, much like any other at-will employee protected by the WPA, and who lost his opportunity to be reaffirmed in his position as the chief of police because, according to the evidence and the jury's conclusion at trial, the mayor chose to retaliate against him due to his whistleblowing activities. As such, I remain with my findings and conclusions on all pertinent appellate issues in this case as set forth in my prior dissents, *Whitman v City of Burton*, 293 Mich App 220 and *Whitman v City of Burton (On Remand)*, 305 Mich App 16, 40; 850 NW2d 621 (2014).

A. *WURTZ*

In *Wurtz*, the plaintiff, Richard Wurtz, entered into a fixed-term employment contract with the Beecher Metropolitan District, which manages water and sewer for a portion of Genesee County. *Wurtz*, 495 Mich at 244-245. Wurtz contracted to serve a 10-year term as the district administrator; he drafted the contract himself because he was serving as the district's attorney at the time he entered into the agreement. *Id*. at 245. Per the terms of the contract he drafted, Wurtz served from February 1, 2000 to February 1, 2010. *Id*. Notably, the contract did not contain an extension or renewal clause. *Id*. at 248. Wurtz's relationship with the board members soured and became "tumultuous" in the two years before his contract expired, which he claimed was due in part to his engagement in whistleblowing activities. *Id*. at 245-247. As his fixed term neared its expiration, Wurtz solicited the board to extend his contract, and he warned the board members that if they did not extend his contract beyond the 10-year period as he wished, he would consider their failure to do so retaliation under the WPA for actions he took against them during his tenure. *Id*. at 246-247. The board voted not to extend Wurtz's contract, and instead, allowed it to expire per the terms of the contract. *Id*. As the Supreme Court emphasized in its opinion, "[o]ne essential and undisputed fact bears emphasis; Wurtz suffered no adverse consequences in the context of his self-drafted 10-year contract." *Id*. He finished his term of employment with no change in his employment status. After the contract expired, Wurtz sued the district and three of its board members alleging a violation of the WPA and wrongful violation of public policy. *Id*. The trial court granted the district's motion for summary disposition, and this Court reversed in a split decision. *Id*. at 248.

The Supreme Court granted leave to appeal and framed the legal issue in dispute as "whether the plaintiff suffered an adverse employment action under the Whistleblower Protection Act (WPA), MCL 15.361 *et seq.*, when the defendants declined to renew or extend the plaintiff's employment contract, *which did not contain a renewal clause beyond the expiration of its ten year term.*" *Wurtz v Beecher Metro Dist*, 494 Mich 862; 831 NW2d 235 (2013) (emphasis added). In its analysis, the Supreme Court concluded that "a contract employee seeking a new term of employment should be treated the same as a prospective employee for purposes of the WPA." *Wurtz*, 495 Mich at 249. Thus, "the question then becomes whether a spurned job applicant can bring a claim under the WPA." *Id*. The Court held that "the WPA, by its express language, has no application in the hiring context. Thus, the WPA does not apply when an employer declines to renew a contract employee's contract." *Id*. The Court held that in the

context of the *Wurtz* case, "no relevant difference exists between a new job applicant and a current contract employee seeking a new term of employment." *Id*. at 250. Although the Court held that the WPA did not apply to the plaintiff's request for renewal of his contract in that case, it expressly noted that the contract at issue did not contain a renewal clause, and left open the issue of the effect such a clause would have on its analysis. *Id.* at 258 n 32 (emphasis added)("Wurtz's contract *did not contain any renewal clause imposing some obligation or duty on the employer to act*. Thus, we need not address the effect that such a clause would have on our analysis.").

The relevant provision of the WPA, MCL 15.362, states as follows:

An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

Our Supreme Court noted that, by its express terms, the WPA "only applies to individuals who currently have the status of an 'employee,' " *Wurtz*, 495 Mich at 252, and because Wurtz made "no claim that his employment contract was in any way breached or that he was subject to a specific adverse employment action enumerated by the WPA during his contract term," his claim was not covered by the WPA. *Id*. at 252 n 16. The Court noted that "[w]hile the ADEA[3] and Title VII[4] may apply in the context of a contract renewal, that fact has no bearing on the application of the WPA . . . ." *Id*. at 255. As to why the WPA only covers current employees and not prospective employees, our Supreme Court noted, "[t]his Court need not inquire why the Legislature chose to *confine the WPA's protections by the bookends of employment* while extending the [Civil Rights Act's] protections to the hiring context. The Legislature elected to craft its legislation that way, and we decline to second-guess the wisdom of the Legislature's policy decisions." *Id*. at 255 (emphasis added).

Our Supreme Court emphasized, however, the limited nature of its holding and made clear that the WPA "does protect" against prohibited employer actions both at-will employees, who "stand[] squarely within the WPA's protections," and employees working under fixed-term contracts with respect to an employee's service under such a contract. *Id*. at 256-257.

---

[3] Age Discrimination in Employment Act, 29 USC 623(a)(1).

[4] Title VII of the federal Civil Rights Act, 42 USC 2000e-2(a)(1).

## B. APPLICATION OF *WURTZ* TO WHITMAN

That brings us to the present case. Whitman testified at trial that he was first hired by the City of Burton as a civilian police aid in June of 1975. He attended the Flint Police Academy and the City of Burton hired him as a paid reserve officer. He then became a part-time officer, and in 1978, he became a full-time officer. After a full-time patrolman's position, in 1991 he was promoted to Sergeant. In 1998 he was promoted to Lieutenant. In December of 2001, defendant Charles Smiley, as mayor at the time, appointed Whitman to serve as the interim police chief, and in March of 2002 he promoted Whitman to the position of chief of police, which Whitman held until Smiley removed him from that post on November 27, 2007.[5]

### 1. PERTINENT ORDINANCES DEFINING WHITMAN'S EMPLOYMENT RELATIONSHIP

Smiley testified that, pursuant to the city charter, each time a mayor is elected, within 30 days of the election the mayor must submit the names of the "Charter five, which was . . .the clerk, the fire chief, the police chief, the assessor, the treasurer . . . to the City Council" to be confirmed," by the Council. In this regard, the city charter provides that city administrative officers are "the Mayor, the Clerk, the Treasurer, the Attorney, the Assessor, the Chief of Police, the Fire Chief, and a Board of Review." Burton Ordinances, § 6.1(a).

Section 6.1(c) provides that "[t]he terms of all administrative officers, except the Mayor, shall be *indefinite*." [Emphasis added.]

Section 6.2(b) provides that

[a]ll other administrative officers [except the City Attorney and the City Auditor] shall be appointed by the Mayor subject to the approval of the Council, and shall serve at the pleasure of the Mayor *for indefinite terms*, except that the Mayor shall reaffirm or appoint those administrative officers and other appointive officers provided in this charter within thirty (30) days from his election, and give Council notice of same. [Emphasis added.]

---

[5] Smiley, who was first elected mayor in 1991, testified that after the prior police chief retired in 2002, he formed a search committee and ultimately selected Whitman from among the top two or three candidates "because he was a Burton officer. I really thought we should promote within." After his 2003 re-election, Smiley reaffirmed Whitman as the chief of police. As described in detail in earlier opinions of this Court and need not be rehashed here, Whitman presented evidence at trial to establish that he engaged in whistleblowing activities in 2003 and 2004 that raised the ire of Smiley and almost got him fired in 2004. After Smiley was re-elected in November, 2007, he decided not to reaffirm Whitman as the police chief. The jury concluded that this decision was motivated in part by Whitman's whistleblowing activities.

## 2. APPLICABILITY OF WPA TO WHITMAN'S EMPLOYMENT

I disagree with the majority's conclusion that this case fits so neatly into the rule established in *Wurtz.* I begin by noting the significant ways in which this case is different from *Wurtz.* The plaintiff in *Wurtz* was employed pursuant to a 10-year contract with no renewal clause. The contract contained no provisions for changing the end-date or for otherwise renewing the term of employment. Thus, there was nothing that could require the employer to make a choice about the plaintiff's employment; the employment simply expired. The end of the plaintiff's employment relationship was a *fait accompli.* Any hope the plaintiff had of employment after the expiration of the 10-year term was in striking up a new term of employment. In this sense, given the terms of the plaintiff's employment agreement, he was nothing more than a prospective employee. As the dissenting opinion (which was ultimately embraced by the Supreme Court) pointed out when the *Wurtz* case was before this Court:

> The WPA requires the existence of an employment relationship. By plaintiff's own admission, defendants scrupulously adhered to the terms of his contract. Plaintiff now seeks damages because defendants abided by the terms of his employment contract. Plaintiff's position is illogical and lacks any support in our jurisprudence. *Absent a contractual obligation or legal duty to consider an extension or renewal* of an employment contract, a cause of action under the WPA is unavailing when a contractual employee finishes a fixed-term contract. [*Wurtz v Beecher Metro Dist*, 298 Mich App 75, 91; 825 NW2d 651 (2012), rev'd 495 Mich 242; 848 NW2d 121 (2014) (emphasis added).]

I respectfully suggest that the instant case falls squarely within the exception set forth in the dissenting opinion of our Court and as expressly carved out by our Supreme Court when it held that the ruling in *Wurtz* dealt only with a fixed term contract that "*did not contain a renewal clause beyond the expiration of its ten year term.*" *Wurtz*, 494 Mich at 862 (emphasis added). See also *Wurtz*, 495 Mich at 257 n 32. Here, in contrast to Wurtz's fixed-term contract, the Burton Ordinances contained a clause providing that the chief of police's term of employment "shall be indefinite," § 6.1(c), as well as a clause pertaining to the renewal of that "indefinite term[]," § 6.2(b). Notably, § 6.2(b) of the Burton Ordinances provided that Whitman's employment was indefinite, "except that the Mayor shall reaffirm or appoint those administrative officers and other appointive officers provided in this charter within thirty (30) days from his election, and give Council notice of same."[6] This is effectively a renewal clause that imposed an obligation on the employer to act or to make a choice about Whitman, meaning that the issue involved in this case was expressly not addressed in *Wurtz.* See *Wurtz*, 495 Mich at 258 n 32

---

[6] Contrary to the characterization set forth in the majority opinion, plaintiff was not appointed to "a four-year term" or a "four-year appointment" as the chief of police. Rather, it was Mayor Smiley who held a four-year term. Upon his election, the city charter tasked him with deciding whose names to submit to the City Council to serve as his administrative officers; those officers served at his pleasure. Upon his re-election, Smiley was tasked with deciding who to *reaffirm* in that capacity.

("Wurtz's contract did not contain any renewal clause imposing some obligation or duty on the employer to act. Thus, we need not address the effect that such a clause would have on our analysis.").

It is the existence of the choice, mandated by the renewal clause, that takes this case outside the ambit of *Wurtz* and brings Whitman within the protections of the WPA. Pursuant to the Burton Ordinances, Whitman's term of employment was expressly and repeatedly defined as "indefinite," and was only to be re-evaluated at the time a mayor won re-election. Like any at-will employee, he could certainly be fired at any time, as he served at the pleasure of the mayor—this simply means that the mayor was delegated the authority to choose several of the city's employees who served as his or her administrative officers. In general, Whitman was, for all intents and purposes, an at-will employee, and such employees are protected by the WPA. *Wurtz*, 495 Mich at 256. Notably, upon a mayor's re-election, § 6.2(b) imposed an obligation or duty on the mayor to act and to make a decision about his administrative officers' continued employment. Section 6.2(b) provides that the mayor "shall reaffirm or appoint those administrative officers and other appointive officers provided in this charter within thirty (30) days from his election, and give Council notice of same." Such a decision was mandated, as evidenced by the use of the word "shall" in § 6.2(b). Burton Ordinances § 10.05(B) (defining the word "shall" to mean that "[t]he act referred to is mandatory."). See also *Old Kent Bank v Kal Kustom, Enterprises*, 255 Mich App 524, 532; 660 NW2d 384 (2003) ("The word 'shall' is generally used to designate a mandatory provision . . . ."). Therefore, unlike *Wurtz*, this case did not involve an employment relationship that was bound to expire on its own terms, leaving plaintiff in the same position as that of a prospective employee. The terms of Whitman's employment required Smiley to make a choice about the direction in which the employment relationship would go.

Although police chiefs often serve at the pleasure of their mayor, it is also true that police officers often attain such a position after years of service in law enforcement, and it becomes the capstone of their careers. Many serve for one or more decades in the position and retire from it at the end of their career. To be sure, Whitman was not entitled to serve as long as he wished in the role of chief of police. He could be fired at any time and for any reason that is not violative of the law. But given the language of the Burton Ordinances, I would hold that he was serving within the bookends of his employment and was protected from being fired or not reaffirmed by Smiley based on discriminatory reasons in violation of the WPA. To interpret the applicability of the WPA as the majority suggests, in addition to being incorrect in my opinion, would potentially compromise the role of the chief of police, as he or she would risk losing his job if he did not follow the mandates of the mayor, including ignoring a violation of a law or regulation or rule so as not to risk being fired. That cannot be what the WPA enactors intended.

Because Whitman held an indefinite term of employment that carried with it the express option of being continued by reaffirmation, I find that any decision to terminate that employment, if motivated by protected activity, was a violation of the WPA. "The underlying purpose of the WPA is protection of the public. *The statute meets this objective by protecting the whistleblowing employee* and by removing barriers that may interdict employee efforts to report violations or suspected violations of the law." *Pace v Edel-Harrelson*, __ Mich App __; __ NW2d __ (Docket No. 319223, issued February 24, 2015), slip op at 5 (emphasis added). I decline to adopt such a narrow reading of the act so as to allow an employer to

discriminate against an employee whose term of employment is expressly subject to a renewal clause, yet face no consequences under the WPA for taking a discriminatory action.[7]  Where the terms of employment require consideration of renewal, I cannot interpret the WPA so as to countenance willful discrimination for whistleblowing activities at the time the employer makes a decision on that renewal clause.  Indeed, the WPA is a remedial statute that is to be liberally construed.  See, e.g., *Pace*, slip op at 5.  Allowing an employer who is mandated to make a choice about a current employee to discriminate against that employee because he or she engaged in protected whistleblowing activities would, in my mind, strike a damaging blow to the WPA.

## C.  ADOPTION OF THE ANALYSIS IN MY PRIOR DISSENTS

In light of the Supreme Court's opinion in *Whitman*, 493 Mich 303, and its decision to "VACATE the judgment of the Court of Appeals" following the first remand and remand for a second time to consider the impact of *Wurtz*, *Whitman*, 497 Mich 896, the slate has been wiped clean of this Court's earlier binding opinions.  The majority duly obliges its obligation to reconsider this case in light of *Wurtz*.  But in addition, the majority re-adopts its earlier analysis as set forth after the first remand in *Whitman (On Remand)*, 305 Mich App at 22-33, nearly verbatim.  As noted in the introductory paragraph of this dissenting opinion, I take issue with the majority's attempt to engraft a requirement into MCL 15.362 that does not exist.  MCL 15.362 provides that

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, *a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body*, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action. [Emphasis added.]

Nothing in the plain language of the statute requires a court or a jury to decide as a matter of fact whether the "law or regulation or rule" objectively advances the public interest.  No qualitative analysis is called for to decide which "law or regulation or rule" is worthy of being covered by the WPA.  The plain language of MCL 15.362 does not remotely suggest that some laws are included and others are not.  As the Supreme Court pointed out in *Whitman*, 493 Mich at 312:

> When interpreting a statute, we follow the established rules of statutory construction, the foremost of which is to discern and give effect to the intent of

---

[7] This is not to imply that a renewal clause offers an at-will employee such as plaintiff any greater protections than that of any other at-will employee.  Rather, I would simply hold that the choice an employer makes on a renewal clause is within the "bookends" of the at-will employee's employment.

the Legislature. To do so, we begin by examining the most reliable evidence of that intent, the language of the statute itself. If the language of a statute is clear and unambiguous, the statute must be enforced as written and no further judicial construction is permitted. Effect should be given to every phrase, clause, and word in the statute and, whenever possible, no word should be treated as surplusage or rendered nugatory. Only when an ambiguity exists in the language of the statute is it proper for a court to go beyond the statutory text to ascertain legislative intent. [Footnotes omitted.]

The plain and unambiguous language of the WPA, *as is*, "meets its objective of protecting the public", *Id*. at 318, and "further judicial construction" is neither required nor permitted, *Id*. at 312. The Supreme Court also admonished that when "there is no 'primary motivation' or 'desire to inform the public' requirement contained within the WPA," such motivation requirement cannot be judicially imposed, as "[t]o do so would violate the fundamental rule of statutory construction that precludes judicial construction or interpretation where, as here, the statute is clear and unambiguous." *Whitman*, 493 Mich at 313.

Despite the Supreme Court's explicit and repeated admonitions *not* to consider a plaintiff's motives when determining whether a plaintiff has engaged in protected activity under the WPA—because such motive is irrelevant to the issue—the majority opinion attempts to place an invisibility cloak over its effort to do just that. In imposing a new, judicially created requirement to MCL 15.362 to evaluate whether, in fact, the "law or regulation or rule" at issue in the WPA action actually serves the public interest, motive—or purpose—comes back into the equation. For example, the majority describes Whitman's attempt to enforce Ordinance 68-C as a "(mis)use" of the WPA. They opine that Whitman's conduct "objectively disserves the public interest," that he "objectively serves his interest, but harm's the public's," and that "[t]his is an insistence by an employee, plain and simple, to get his perks . . . ." As noted by Shakespeare, "[a] rose, by any other name," does not alter what it is—still a rose. The majority attempts to add the sweet fragrance of a new name to its judicially created imposition: assessing the objectives of the plaintiff and determining whether his or her actions actually advance the public interest. Nothing in the plain language of MCL 15.362 supports this additional requirement.

Even if the majority has correctly engrafted a new requirement into the language of MCL 15.362, I disagree that Whitman's actions were "unquestionably and objectively contrary to the public interest" and "harmed, not advanced, the public interest," as characterized by the majority. As I noted in my prior dissenting opinions, seeking to balance a budget through violating one of the city's own ordinances hardly seems to serve the public interest. *Whitman*, 293 Mich App at 248. Whitman was fulfilling his duty as police chief to uphold the law, which was certainly in the public interest. *Id*. The public interest is served when a violation of the law is reported. *Whitman (On Remand)*, 305 Mich App at 46; See also *Dolan v Continental Airlines/Continental Express*, 454 Mich 373, 378 n 9; 563 NW2d 23 (1997). And while the city may save expenses by ignoring the requirements of Ordinance 68-C, the public will literally not be served on the days the public servants subject to the ordinance are absent from work, taking their allotted sick, personal, and vacation time in light of the mayor's warning to "use it or lose it." *Whitman (On Remand)*, 305 Mich App at 47, n 4.

I could, like the majority, reiterate my arguments as set forth in my prior dissenting opinions. To do so, however, would be purely repetitive, as nothing has changed the analysis. Consequently, to spare the reader the redundancy, I adopt and remain with my findings and conclusions on all pertinent appellate issues in this case as set forth in my prior dissents, *Whitman*, 293 Mich App 220, and *Whitman (On Remand)*, 305 Mich App 16.

## D. CONCLUSION

Because I conclude that *Wurtz* does not affect the outcome of this case, I would affirm the trial court's order awarding judgment to Whitman in keeping with the jury's verdict. As set forth in my prior dissents, the trial court did not err in denying defendants' motion for JNOV. See *Whitman*, 293 Mich App at 237-239; *Whitman (On Remand)*, 305 Mich App at 41-47. There was sufficient evidence of causation to create a material question of fact for the jury. See *Whitman*, 293 Mich App at 240-242; *Whitman (On Remand)*, 305 Mich App at 47-57. The trial court did not abuse its discretion in denying defendant's motion for a new trial. See *Whitman*, 293 Mich App at 250-252. And the trial court did not err by concluding that Smiley is not entitled to a setoff. *Id*. at 252-253. Finally, for the reasons stated above, I strongly disagree with the majority's conclusions that Whitman did not engage in protected activity and that he was not a whistleblower. Such conclusions conflict with our Supreme Court's earlier rulings and dangerously distort the WPA.

/s/ Jane M. Beckering