# STATE OF MICHIGAN

# COURT OF APPEALS

BARBARA PACE,

　　　　　　Plaintiff-Appellant,

v

JESSICA EDEL-HARRELSON, CHRISTY
LONG, AND SIREN EATON SHELTER INC.,

　　　　　　Defendants-Appellees.

UNPUBLISHED
April 14, 2016

No. 319223
Eaton Circuit Court
LC No. 12-000454-CZ

ON REMAND

Before: SHAPIRO, P.J., and GLEICHER and RONAYNE KRAUSE, JJ.

PER CURIAM.

This case returns to us on remand to determine whether plaintiff's discharge from employment with SIREN Eaton Shelter, Inc., was against public policy. The trial court granted defendant's motion for summary disposition under MCR 2.116(C)(10), dismissing plaintiff's claim that her employment was terminated in violation of Michigan's Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq*., and, alternatively, that her discharge was against public policy. We previously concluded that the trial court erred in granting, summary disposition to defendants on plaintiff's WPA claim because there was a genuine factual dispute as to whether plaintiff had reported what she believed to be a violation or suspected violation of an existing law. *Pace v Edel-Harrelson*, 309 Mich App 256, 267-269; 870 NW2d 745 (2015), rev'd ___ Mich ___ (2016). Given our ruling on the WPA claim, we did not rule on whether the trial court erred in dismissing plaintiff's alternative claim that her discharge was against public policy. *Id*. at 272. The Supreme Court reversed our decision, holding plaintiff's "unexpressed personal belief when making a report" was "not relevant for purposes of MCL 15.362," and that plaintiff had only reported "a suspected *future* violation of a law rather than 'a violation or a suspected violation of law.' " *Pace v Edel-Harrelson*, ___ Mich ___, ___; ___ NW2d ___ (2016); slip op pp 8-10, quoting MCL 15.362 (emphasis added). The Court remanded the case to us for "consideration of the merits of plaintiff's claim of discharge against public policy." *Id*. at ___; slip op p 10. For the reasons stated in this opinion, we affirm.

As a general rule, Michigan law "presumes that employment relationships are terminable at the will of either party." *Landin v Healthsource Saginaw, Inc*, 305 Mich App 519, 523; 854 NW2d 152 (2014). "However, an exception has been recognized to that rule, based on the

principle that some grounds for discharging an employee are so contrary to public policy as to be actionable." *Suchodolski v Mich Consol Gas Co*, 412 Mich 692, 695; 316 NW2d 710 (1982); *McNeil v Charlevoix Co*, 484 Mich 69, 79; 772 NW2d 18 (2009). In *Landin*, we explained that our Supreme Court

> opined that the only grounds that have been recognized as so violative of public policy that they serve as an exception to the general rule of at-will employment are: (1) explicit legislative statements prohibiting the discharge, discipline, or other adverse treatment of employees who act in accordance with a statutory right or duty (e.g., the Civil Rights Act, MCL 37.2701; the Whistleblowers' Protection Act, MCL 15.362; the Persons With Disabilities Civil Rights Act, MCL 37.1602), (2) where the alleged reason for the discharge was the failure or refusal of the employee to violate a law in the course of employment (e.g., refusal to falsify pollution reports; refusal to give false testimony before a legislative committee; refusal to participate in a price-fixing scheme), and (3) where the reason for the discharge was the employee's exercise of a right conferred by a well-established legislative enactment (e.g., retaliation for filing workers' compensation claims). [*Landin*, 305 Mich App at 524, citing *Suchodolski*, 412 Mich at 695-696.]

In *Terrien v Zwit*, 467 Mich 56, 66–67; 648 NW2d 602 (2002), our Supreme Court explained that

> [i]n defining "public policy," it is clear to us that this term must be more than a different nomenclature for describing the personal preferences of individual judges, for the proper exercise of the judicial power is to determine from objective legal sources what public policy *is*, and not to simply assert what such policy *ought* to be on the basis of the subjective views of individual judges. . . .
>
> In identifying the boundaries of public policy, we believe that the focus of the judiciary must ultimately be upon the policies that, in fact, have been adopted by the public through our various legal processes, and are reflected in our state and federal constitutions, our statutes, and the common law. See *Twin City Pipe Line Co v Harding Glass Co*, 283 US 353, 357; 51 S Ct 476; 75 L Ed 1112 (1931). The public policy of Michigan is *not* merely the equivalent of the personal preferences of a majority of this Court; rather, such a policy must ultimately be clearly rooted in the law. There is no other proper means of ascertaining what constitutes our public policy. [emphasis in original.]

In other words, "the courts may only derive public policy from objective sources[.]" *Kimmelman v Heather Downs Mgt Ltd*, 278 Mich App 569, 573; 753 NW2d 265 (2008).

Plaintiff only cites the WPA as the objective source of her public policy claim. However, the WPA " 'meets [its] objective by protecting the whistleblowing employee and by removing barriers that may interdict employee efforts to report violations or suspected violations of the law.' " *Anzaldua v Neogen Corp*, 292 Mich App 626, 631; 808 NW2d 804 (2011), quoting *Dolan v Continental Airlines/Continental Express*, 454 Mich 373, 378; 563 NW2d 23 (1997). In other words, the only public policy expressed by the legislature was to protect employees who

report already-occurred violations or suspected violations of the law in accordance with the requirements of the WPA. In the absence of some other source of the asserted public policy, we are constrained by the text of the WPA and the interpretation given to it by our Supreme Court in its opinion reversing our prior decision in this case.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Elizabeth L. Gleicher
/s/ Amy Ronayne Krause