KIMMELMAN v HEATHER DOWNS MANAGEMENT LIMITED

Docket No. 277201. Submitted April 9, 2008, at Detroit. Decided April 15, 2008, at 9:00 a.m. Leave to appeal sought.

David Kimmelman brought a common-law, wrongful-discharge action in the Monroe Circuit Court against Heather Downs Management Limited and Legacy Golf Course LLC. Before he was fired, the plaintiff had cooperated in a police investigation and criminal prosecution for sexual assault of a coworker by one of the defendants' co-owners and had attended the co-owner's sentencing hearing. The court, Michael W. LaBeau, J., granted summary disposition in favor of the defendants, ruling that the plaintiff's exclusive remedy lay in the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq.*, but the plaintiff had failed to file his action within the 90-day statute of limitations for claims under the WPA. The court also denied a subsequent motion by the plaintiff for leave to file an amended complaint to allege that the sexual assault took place away from work. The plaintiff appealed.

The Court of Appeals *held*:

1. The WPA, among other things, forbids an employer from discharging an employee because the employee was requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action. The language of the WPA does not limit the act's application to investigations involving employers. The plaintiff's claim, that the WPA does not apply to his claim because the investigation in which he participated and the court proceeding that he attended did not pertain to his actual employment, is without merit.

2. The additional allegation that the plaintiff sought to make in an amended complaint is immaterial, and the trial court did not abuse its discretion by denying the plaintiff's motion for leave to file an amended complaint.

Affirmed.

STATUTES — WHISTLEBLOWERS' PROTECTION ACT — INVESTIGATIONS, HEARINGS, AND INQUIRIES.

The Whistleblowers' Protection Act forbids an employer from discharging an employee because the employee was requested by a

public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action; this prohibition applies even where the investigation, hearing, or court action does not involve the employer (MCL 15.362).

*Charles W. Palmer* for the plaintiff.

*Lyden, Liebenthal & Chappell, Ltd* (by *Erik G. Chappell*), for the defendants.

Before: JANSEN, P.J., and DONOFRIO and DAVIS, JJ.

DAVIS, J. Plaintiff appeals as of right an order granting summary disposition pursuant to MCR 2.116(C)(8), failure to state a claim on which relief can be granted, and denying his motion to amend the complaint.[1] We affirm.

A grant or denial of summary disposition is reviewed de novo on the basis of the entire record to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A motion brought under MCR 2.116(C)(8) should be granted only where the complaint is so legally deficient that recovery would be impossible even if all well-pleaded facts were true and construed in the light most favorable to the nonmoving party. *Id.* at 119. Only the pleadings may be considered when deciding a motion under MCR 2.116(C)(8). *Rozwood, supra* at 119-120. Because defendants moved for summary disposition in lieu of filing an answer, the only pleading in this case is the complaint. See MCR 2.110(A).

We likewise review de novo questions of statutory construction, with the fundamental goal of giving effect

---

[1] The trial court granted summary disposition in favor of Heather Downs Management Limited pursuant to MCR 2.116(C)(1), lack of personal jurisdiction. Plaintiff conceded the correctness of this determination below, and this is not an issue on appeal.

to the intent of the Legislature. *Weakland v Toledo Engineering Co, Inc*, 467 Mich 344, 347; 656 NW2d 175 (2003), amended on other grounds 468 Mich 1216 (2003). The goal of statutory interpretation is to determine and give effect to the intent of the Legislature, with the presumption that unambiguous language should be enforced as written. *Gladych v New Family Homes, Inc*, 468 Mich 594, 597; 664 NW2d 705 (2003). If the language is unambiguous, "the proper role of a court is simply to apply the terms of the statute to the circumstances in a particular case." *Veenstra v Washtenaw Country Club*, 466 Mich 155, 160; 645 NW2d 643 (2002), citing *Turner v Auto Club Ins Ass'n*, 448 Mich 22; 528 NW2d 681 (1995).

Leave to amend a pleading "shall be freely given when justice so requires." MCR 2.118(A)(2). "Leave to amend the pleadings should be freely granted to the nonprevailing party upon a grant of summary disposition unless the amendment would be futile or otherwise unjustified." *Lewandowski v Nuclear Mgt Co, LLC*, 272 Mich App 120, 126-127; 724 NW2d 718 (2006). The trial court's decision whether to grant leave to amend a pleading is reviewed for an abuse of discretion. *Id.*

Taking plaintiff's complaint as true, plaintiff was employed by defendants as a mechanic. One of defendants' co-owners, Joseph Garverick, sexually assaulted one of plaintiff's coworkers; plaintiff's proposed amended complaint emphasizes that this assault took place away from work and after working hours. The coworker told plaintiff about the assault. Plaintiff agreed to give a statement to the Michigan State Police in their ensuing criminal investigation of Garverick, and plaintiff was subpoenaed as a witness at Garverick's trial. Plaintiff was not required to testify because that case was resolved by entry of a plea. On September

21, 2006, plaintiff accompanied the coworker to Garverick's sentencing. The next day, when plaintiff reported to work, his employment was terminated. Plaintiff filed the instant suit on January 10, 2007, alleging common-law wrongful discharge. Specifically, he alleged that he was terminated as retaliation for his cooperation with the criminal investigation and prosecution and his presence at the sentencing.

Defendants argued all of the alleged bases for plaintiff's termination constitute protected activities under the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq*. "The existence of the specific prohibition against retaliatory discharge in the WPA is determinative of the viability of a public policy claim." *Dudewicz v Norris-Schmid, Inc*, 443 Mich 68, 79; 503 NW2d 645 (1993). Therefore, plaintiff's exclusive remedy would be under the WPA, and he would have no other "public policy" claim. Critically, the WPA provides 90 days in which to file suit, MCL 15.363(1), and plaintiff exceeded this window. The trial court granted summary disposition on that basis.

Whether any of plaintiff's alleged bases for his termination fall outside the scope of the WPA is therefore the issue before us in this appeal.

Plaintiff has not alleged in his complaint, nor has he alleged in his proposed amended complaint, that his employment was anything other than at-will. In the absence of any indications to the contrary, employment is rebuttably presumed to be at-will. *Lytle v Malady (On Rehearing)*, 458 Mich 153, 163-164; 579 NW2d 906 (1998). Because plaintiff has not alleged anything that would tend to rebut this presumption, plaintiff must be considered an at-will employee on the basis of the pleadings. Consequently, his employment was terminable at any time and for any—or no—reason, unless

that termination was contrary to public policy. *Suchodolski v Michigan Consolidated Gas Co*, 412 Mich 692, 695; 316 NW2d 710 (1982). "Public policy" proscribing termination of at-will employment is "most often" used in three situations: (1) "adverse treatment of employees who act in accordance with a statutory right or duty," (2) an employee's "failure or refusal to violate a law in the course of employment," or (3) an "employee's exercise of a right conferred by a well-established legislative enactment." *Suchodolski, supra* at 695-696.

Our Supreme Court's enumeration of "public policies" that might forbid termination of at-will employees was not phrased as if it was an exhaustive list. However, as a general matter, "the proper exercise of the judicial power is to determine from objective legal sources what public policy *is*, and not to simply assert what such policy *ought* to be on the basis of the subjective views of individual judges." *Terrien v Zwit*, 467 Mich 56, 66; 648 NW2d 602 (2002) (emphasis in original), citing *Marbury v Madison*, 5 US (1 Cranch) 137, 177; 2 L Ed 60 (1803). Consistently with this principle that the courts may only derive public policy from objective sources, our Supreme Court's enumerated "public policies" in the context of wrongful termination all entail an employee exercising a right guaranteed by law, executing a duty required by law, or refraining from violating the law. Furthermore, where there exists a statute explicitly proscribing a particular adverse employment action, that statute is the exclusive remedy, and no other "public policy" claim for wrongful discharge can be maintained. *Dudewicz, supra* at 78-80.

The Whistleblowers' Protection Act provides as follows:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's

compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action. [MCL 15.362.]

It is not disputed that plaintiff did not report, nor was he about to report, any violation of law. It is also not disputed that the criminal investigation and court action did not technically involve plaintiff's employer, but rather the individual co-owner, in that person's individual capacity, of the business entities that employed plaintiff. Plaintiff's proposed amended complaint states —and the parties have treated as presumed—that the subject of the investigation was not related to plaintiff's employer or employment.

Nevertheless, the plain language of the statute is not limited to violations by employers. *Dudewicz, supra* at 77. In *Dudewicz*, our Supreme Court determined that the facts before it did not warrant "test[ing] the outer limits of this rather broad statute." *Id.* The facts here do. Moreover, this Court must follow the unambiguous language of a statute, even if doing so would produce an absurd or irrational result.[2] Our Supreme Court has

---

[2] We do not suggest that an irrational result exists here. The Legislature intended the WPA to serve a vitally important and far-reaching goal: protection of the public by protecting *all* employees who have knowledge that is relevant to the protection of the public from some abuse or violation of law and who, for whatever reason, might fear that their employers would not wish them to divulge that information or otherwise participate in a public investigation. The Legislature clearly intended to maximize employees' involvement by removing as much doubt as pos-

explained that the courts must follow the plain and unambiguous language of a statute, even if doing so would produce an absurd or irrational result. *People v McIntire*, 461 Mich 147, 155-158 & n 2; 599 NW2d 102 (1999). The language in the WPA is unambiguous: an employee need only be requested by a public body to participate in *an* investigation, hearing, inquiry, or court action (or, under the first part of the statute, report or be about to report *a* violation of law). There is absolutely nothing, express or implied, in the plain wording of the statute that limits its applicability to violations of law *by the employer* or to investigations *involving the employer*.

Plaintiff's argument that the WPA does not apply is that the investigation in which he participated and the court actions that he attended did not pertain to his actual employment. In support, plaintiff cites several cases in which this Court or our Supreme Court avoided addressing whether some connection to the employee's employment was required by the WPA by concluding that there was, in fact, a connection to the employment. *Dudewicz, supra* at 77-78; *Terzano v Wayne Co*, 216 Mich App 522, 530-532; 549 NW2d 606 (1996); *Trepanier v Nat'l Amusements, Inc*, 250 Mich App 578, 586-588; 649 NW2d 754 (2002). But in all these cases the courts deemed it unnecessary to address the question directly, and thus they left it outstanding. Furthermore, although in the context of a report rather than a participation, our Supreme Court has observed that there may "[f]requently" be "a close connection . . . between the reported violation and the employment setting," but "no such limitation is found in the stat-

---

sible regarding whether those employees will face negative consequences. Moreover, the Legislature clearly did not intend the WPA to protect the public *only* from violations of law or abuses by employers, but rather from violations of law or abuses *in general*.

ute." *Dolan v Continental Airlines/Continental Express*, 454 Mich 373, 381; 563 NW2d 23 (1997).

Plaintiff alleges that his employment was terminated because he participated in a criminal investigation and court action. These activities are protected under the WPA, irrespective of whether the criminal investigation had any connection to his employer or to his employment. Plaintiff therefore alleges that he was terminated because of his participation in a protected activity under the WPA, so his exclusive remedy is a claim under the WPA. Pleadings in Michigan need only provide a statement of facts and allegations sufficient to advise the adverse party of the nature of the claims being brought, so a complaint need not explicitly refer to a statute to bring a claim under that statute. MCR 2.111(B)(1); *Johnson v A & M Custom Built Homes of West Bloomfield, PC*, 261 Mich App 719, 723; 683 NW2d 229 (2004). Plaintiff's claim is exclusively under the WPA, and because plaintiff did not meet the 90-day limitations period under MCL 15.363(1), the trial court properly granted summary disposition in defendant's favor.

Plaintiff additionally argues that his attendance at Garverick's sentencing is not protected under the WPA. It appears that defendants conceded this point, although we are not bound by a party's statement of law, or even the parties' stipulations on a point of law. *Rice v Ruddiman*, 10 Mich 125 138 (1862); *In re Finlay Estate*, 430 Mich 590, 595-596; 424 NW2d 272 (1988). In any event, even if plaintiff's apparently gratuitous attendance at Garverick's sentencing is not protected under the WPA, "public policy" must still be derived from an objective source. Plaintiff cites article 1, § 24 of the Michigan Constitution, which affords certain rights to crime victims, but plaintiff is not himself a crime

victim, so he cannot have been exercising a right or executing a duty *of his own*. Plaintiff also cites MCL 750.122, the witness anti-intimidation statute, but because plaintiff did not attend the sentencing to provide information, he again could not have been exercising a right or executing a duty *of his own*. In summary, we simply have not found an objective source for a public policy that would make termination of an at-will employee legally wrongful under these circumstances.

We finally note that the only significant distinction between plaintiff's complaint and plaintiff's proposed amended complaint is clarification of the fact that the assault was unrelated to plaintiff's employment. Because this fact is immaterial, the trial court did not abuse its discretion in denying leave to amend on the basis of futility.

Affirmed.