# STATE OF MICHIGAN

# COURT OF APPEALS

---

EMILY WIECHMANN,

        Plaintiff-Appellant,

v

HOME CARE ALTERNATIVES, LLC, and
MARK LONG,

        Defendant-Appellee.

UNPUBLISHED
October 13, 2015


No. 321711
Ingham Circuit Court
LC No. 13-000481-CD

---

Before: BOONSTRA, P.J., and SAAD and HOEKSTRA, JJ.

PER CURIAM.


Plaintiff appeals by right the trial court's order granting summary disposition to defendants pursuant to MCR 2.116(C)(10) (no genuine issue of material fact) on her wrongful termination claims asserting violations of the whistleblowers' protection act (WPA), MCL 15.361 *et seq.*, and public policy. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant Long hired plaintiff to serve as the administrator of defendant Home Care Alternatives (HCA). Plaintiff's employment ended after one week. She claims that she was fired for directing her subordinate, Tim Krzys, to report an incident of suspected elder abuse. During plaintiff's week of employment, she had two disagreements with Krzys. The first, which did not involve a reporting issue or suspected abuse, related to a patient, SM, whom an HCA nurse had discovered using crack cocaine in her home. Plaintiff wanted to discontinue services to SM altogether, whereas Krzys (who had directed the nurse to leave SM's home upon discovering the drug use) believed that services could still be provided as long as employees were appropriately trained and told to leave if drug use was occurring. Plaintiff testified in her deposition that Long appeared to agree with Krzys and also indicated that he did not know if HCA could terminate services to a patient without the approval of the Tri-County Office on Aging (TCOA), which sent clients to HCA.

The second disagreement related to a patient, GB, who had reported to an HCA nurse that her husband had struck her on the face. Krzys verified that GB had a 2 to 3 inch facial bruise. Plaintiff and Krzys, who as mandatory reporters are required to report instances of vulnerable

-1-

adult abuse to Adult Protective Services (APS), see MCL 400.11a(1), disagreed about whether the incident had to be reported. Krzys did not believe that reporting was necessary, because GB and her husband often fought, mutually, and Krzys had observed that GB was quite capable of defending herself and therefore did not believe that GB was a vulnerable adult. Plaintiff believed that the situation had to be reported and she demanded that Krzys make the report, telling him that she would report the situation herself if he did not do so. Krzys reported the situation at plaintiff's insistence. Upon subsequent investigation, the police did not substantiate any claims of abuse.

After this incident, plaintiff sent two e-mails to Long. In the first, with a subject line, "Resignation?", plaintiff related to Long her disagreement with Krzys concerning GB. She elaborated that she did not think that she and Krzys agreed on how to handle ethical issues in the office, and that either Krzys had to be terminated or she would resign. In her deposition, plaintiff agreed that this e-mail was an "ultimatum." In the second e-mail, sent later that day, plaintiff told Long to "hold off" on ordering business cards for her because she was unsure whether she would be staying with HCA. Long and plaintiff then had a conversation in which Long agreed that the incident involving GB should have been reported; he indicated that he would speak to Krzys.

Later that evening, Long spoke to plaintiff on the phone and told plaintiff that he was accepting her resignation. Plaintiff stated that she did not feel as though she had resigned. Long told plaintiff that he had to consider the longevity of the company, and, given that she had threatened to resign several times, he had to "make a judgment call." Plaintiff then sent Long a lengthy e-mail in which she expressed her belief that she did not resign and her concern that she was being fired for complying with her ethical duties.

Plaintiff thereafter brought suit against defendants, alleging that she was wrongfully terminated, for reporting elder abuse, in violation of the WPA and public policy. The trial court granted defendants' motion for summary disposition on plaintiff's WPA claim because it found that plaintiff was not engaged in protected activity. It granted summary disposition to defendants on plaintiff's public policy claim because it determined that plaintiff did not present facts showing that she was compelled to violate the law and because the alleged abuse had been reported. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's grant of summary disposition. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Id*. at 120. In deciding a motion under MCR 2.116(C)(10), the court considers the evidence in a light most favorable to the non-moving party to determine whether the moving party is entitled to judgment as a matter of law. *Id*. The court considers affidavits, pleadings, depositions, admissions, and other evidence in a light most favorable to the non-moving party. *Id*. "In presenting a motion for summary disposition, the moving party has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). The burden then shifts to the party opposing the motion "to establish that a genuine issue of disputed fact exists." *Id*. "A litigant's mere pledge to establish an issue

of fact at trial cannot survive summary disposition under MCR 2.116(C)(10)." *Maiden*, 461 Mich at 121. It is necessary to "set forth specific facts at the time of the motion showing a genuine issue for trial." *Id.*

## III. WPA CLAIM

MCL 15.362. a provision of the WPA, states:

An employer shall not discharge, threaten, or otherwise discriminate against an employee . . . because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state . . . unless the employee knows that the report is false . . . . [.]

To establish a prima facie case of wrongful termination under the WPA, a "plaintiff must show that (1) [she] was engaged in protected activity as defined by the act, (2), the defendant discharged [her], and (3) a causal connection exists between the protected activity and the discharge." *Chandler v Dowell Sclumberger Inc*, 456 Mich 395, 399; 572 NW2d 210 (1998). We consider each of these elements in turn.

### 1. PLAINTIFF ENGAGED IN A PROTECTED ACTIVITY

The trial court found that plaintiff was not engaged in protected activity under the WPA because, in compelling Krzys to reported the suspected abuse of GB, she was not about to report a violation (by Krzys, or arguably through him by HCA) of MCL 400.11a, but rather was requiring Krzys to comply with the law. This analysis does not go far enough, however, as it does not reflect the broader scope of the activities protected under the WPA.

"There is absolutely nothing, express or implied, in the plain wording of the statute that limits its applicability to violations of law *by the employer* or to investigations *involving the employer*." *Kimmelmann v Heather Downs Mgmt Ltd*, 278 Mich App 569, 575; 753 NW2d 265 (2008). Further, Our Supreme Court has "decline[d] to limit the application of the WPA to reported violations of the employer alone." *Dolan v Continental Airlines/Continental Express*, 454 Mich 373, 381; 563 NW2d 23 (1997). Consequently, if plaintiff reported, or was about to report, an actual or suspected incident of elder abuse (by a third party) in violation of law, see MCL 750.145n, that conduct would constitute protected activity under the WPA. It would not matter that the alleged violator of the law was not her employer but instead was GB's husband.

Taking the evidence in the light most favorable to plaintiff, *Maiden*, 461 Mich at 120, Krzys was "acting on behalf" of plaintiff in making (at plaintiff's command) a report of suspected abuse. MCL 15.362. Because plaintiff threatened to report the violation herself if Krzys did not comply, the evidence also supports the conclusion that plaintiff was "about to report" a violation of the law. *Id.* Therefore, the trial court erred in concluding that plaintiff was not engaged in protected activity.

## 2. PLAINTIFF WAS DISCHARGED

To survive summary disposition of her WPA claim, plaintiff was required to present evidence that could cause a reasonable fact-finder to conclude that she had been "discharged." MCL 15.362. Defendants contend that plaintiff was not "discharged," but instead resigned. We disagree. Before her termination, plaintiff had threatened to resign unless Krzys was terminated, and she stated that she was unsure whether she would be remaining with the company. Although her emails reference a *possible* resignation, they were not an unequivocal statement of resignation. When viewed in a light most favorable to plaintiff, *Maiden*, 461 Mich at 120, the record supports the conclusion that plaintiff did not resign her employment with HCA, but was discharged.

## 3. PLAINTIFF FAILED TO ESTABLISH A CAUSAL CONNECTION BETWEEN THE PROTECTED ACTIVITY AND HER DISCHARGE

A trial court's analysis of causation in a WPA claim requires the application of the burden-shifting analysis set forth in *McDonnell Douglas Corp v Green*, 411 U.S. 792; 93 S Ct 1817; 36 L.Ed.2d 668 (1973). *Debano–Griffin v Lake Co*, 493 Mich 167, 175–176; 828 NW2d 634 (2013). As this Court has recently stated:

> A plaintiff may present a rebuttable prima facie case on the basis of proofs from which a factfinder could infer that the plaintiff was the victim of unlawful retaliation. Once a plaintiff establishes a prima facie case, a presumption of retaliation arises because an employer's adverse action is more likely than not based on the consideration of impermissible factors—for example, [a] plaintiff's protected activity under the WPA—if the employer cannot otherwise justify the adverse employment action.

> The employer, however, may be entitled to summary disposition if it offers a legitimate reason for its action and the plaintiff fails to show that a reasonable fact-finder could still conclude that the plaintiff's protected activity was a "motivating factor" for the employer's adverse action. A plaintiff must not merely raise a triable issue that the employer's proffered reason was pretextual, but that it was a pretext for unlawful retaliation. [*Pace v Edel-Harrelson*, 309 Mich App 256, ___; ___ NW2d ___ (2015).]

Absent direct retaliatory evidence, "a plaintiff must rely on indirect evidence . . . to show that a causal link exists between the whistleblowing act and the employer's adverse employment action." *Id*. at 176.

In this case, plaintiff essentially relies on the temporal closeness between her discussion with Krzys about reporting GB's abuse and her termination, referring this Court to *Mickey v Zeidler Tool & Die Co*, 516 F3d 516, 525 (2008), where the Sixth Circuit stated that "[w]here an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." However, our Supreme Court has stated that "[s]omething more than a temporal connection between

-4-

protected conduct and an adverse employment action is required to show causation" in claims under the WPA. *West v GMC*, 469 Mich 177, 186; 665 NW2d 468 (2003). Moreover, decisions of lower federal courts are not binding upon this Court, although they may be persuasive. *Radtke v Everett*, 442 Mich 368, 381-382; 501 NW2d 155 (1993).

Further, in *Mickey*, the Sixth Circuit noted that its reasoning was limited to a "limited number of cases . . . where an employer fires an employee immediately after learning of a protected activity." *Mickey*, 516 F3d at 525. Thus, in *Mickey* the Court found that the plaintiff had established a prima facie case of causation when he presented proof that his employer essentially fired him immediately (upon the plaintiff's arrival to work that morning) upon learning that he had filed a charge of discrimination with the Equal Opportunity Employment Commission, with no intervening contact between the plaintiff and his employer. *Id*. at 521. By contrast, plaintiff admits that she spoke with Long following the incident with GB, and that Long agreed with her assessment of the situation and stated he would speak to Krzys. Further, plaintiff admitted to sending multiple emails to Long following the incident, and speaking with him on the phone. We therefore conclude that the rationale of *Mickey* does not apply to this case and that, despite the temporal closeness between her protected conduct and her termination, she was required to show some other evidence of retaliation in order to gain the benefit of a presumption.

Further, even if plaintiff had made a prima facie case of causation, if defendants could offer a legitimate reason for their action, plaintiff would be obliged to show that a reasonable fact-finder could still conclude "that the plaintiff's protected activity was a 'motivating factor' for the employer's adverse action." *Debano-Griffin*, 493 Mich at 176. A plaintiff can show an employer's stated reason was pretextual "(1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision." *Dubey v Stroh Brewery Co*, 185 Mich App 561, 565-566; 462 NW2d 758 (1990).

The legitimate, non-retaliatory reason defendants proffered was the fact that plaintiff had made multiple threats to resign during only one week on the job, requiring a judgment call in the interest of the company's longevity. This reason has a basis in fact given the e-mails offered in evidence and plaintiff's admission that she had essentially delivered an ultimatum to Long during her first week of employment. Additionally, nothing in the record suggests that Long ever encouraged or suggested that plaintiff refrain from reporting the suspected abuse. To the contrary, plaintiff herself testified that Long agreed with her decision to report the abuse. The only person who did not wish to report the abuse was Krzys, who was plaintiff's subordinate. The record reflects that Long was only unsupportive of the way in which plaintiff communicated her displeasure with the situation and threatened to resign. We therefore conclude that, even if plaintiff had made a prima facie case for causation, plaintiff could not carry her burden of showing that defendant's stated non-retaliatory reason for her termination was pretextual. *Pace*, 309 Mich App at ___.

Because plaintiff has not shown that defendants' alleged non-retaliatory reason for terminating her employment was mere pretext, she cannot show a causal connection between her protected activity and her discharge from employment. There was insufficient evidence to create a genuine issue of material fact and, accordingly, the trial court did not err in granting summary disposition to defendants on plaintiff's WPA claim.

## IV. PUBLIC POLICY CLAIM

Plaintiff additionally argues that the trial court erred in granting summary disposition to defendants on her termination against public policy claim. We disagree.

Three situations generally proscribe termination of at-will employment: "(1) adverse treatment of employees who act in accordance with a statutory right or duty, (2) an employee's failure or refusal to violate a law in the course of employment, or (3) an employee's exercise of a right conferred by a well-established legislative enactment." *Kimmelmann*, 278 Mich App at 573. However, "where there exists a statute explicitly proscribing a particular adverse employment action, that statute is the exclusive remedy, and no other 'public policy' claim for wrongful discharge can be maintained." *Id*. at 573.

Here, plaintiff claims that she was terminated for performing her statutory duty as a mandatory reporter under MCL 400.11a. This statutory duty requires the reporting of certain violations of the law. Therefore, plaintiff's public policy claim is essentially the same as her WPA claim, that she was terminated for reporting a violation of the law. Because the WPA provides a specific statutory remedy for employees who are terminated for reporting violations of the law, plaintiff cannot pursue a claim for termination in violation of public policy. *Kimmelmann*, 278 Mich App at 573.

Affirmed.


/s/ Mark T. Boonstra
/s/ Henry William Saad
/s/ Joel P. Hoekstra

-6-