*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LINDA RIVERA,

        Plaintiff-Appellee,

v

SVRC INDUSTRIES, INC.,

        Defendant-Appellant.

FOR PUBLICATION
September 2, 2021
9:00 a.m.

No. 341516
Saginaw Circuit Court
LC No. 16-031756-NZ

ON REMAND

Before: M. J. KELLY, P.J., and SERVITTO and BOONSTRA, JJ.

BOONSTRA, J.

Defendant appealed by leave granted the trial court's denial of its motion for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) in this action alleging a violation of the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq.*, and unlawful retaliation against plaintiff in violation of Michigan public policy. This Court reversed and remanded for entry of an order granting summary disposition in favor of defendant. *Rivera v SVRC Indus, Inc*, 327 Mich App 446, 451; 934 NW2d 286 (2019). Plaintiff appealed this Court's decision to our Supreme Court. In lieu of granting leave to appeal, the Court affirmed our holding that plaintiff had failed to establish a genuine issue of material fact regarding her "about to report" claim under the WPA, and our holding that plaintiff had failed to establish a causal connection between plaintiff's communication with defendant's attorney and her termination. *Rivera v SVRC Indus, Inc*, ___ Mich ___ (2021) (Docket No. 159857). The Court vacated the portion of our opinion holding that plaintiff's communication with defendant's attorney was not a "report" under the WPA, stating that this Court's holding was "unnecessary in light of our agreement with [the Court of Appeals'] conclusion that summary disposition was warranted" on causation grounds. *Id.* Finally, the Court reversed our holding that plaintiff's public-policy claim was preempted by the WPA, and remanded the case to this Court to address whether, viewing the evidence in the light most favorable to plaintiff, there is a genuine issue of material fact that plaintiff's termination was unlawful in violation of public policy. *Id.* We hold that defendant is entitled to summary disposition on plaintiff's public-policy claim.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In our previous opinion, this Court summarized the pertinent facts and procedural history of this case:

Plaintiff, Linda Rivera, was employed as the director of industrial operations at defendant, SVRC Industries, Inc., from October 2015 to October 2016. On September 15, 2016, plaintiff conducted a disciplinary meeting with an employee, LS, to address insubordination issues. According to plaintiff, LS made several statements during the meeting that plaintiff perceived to be threatening; specifically, LS raised the possibility of a "revolution" in this country and alluded to the fact that he could operate a firearm, that he was not afraid to pull the trigger, and that he did not discriminate.

Plaintiff reported LS's statements to defendant's chief operating officer, Debra Snyder. Plaintiff asked Snyder whether she should report the incident to the police, and Snyder stated that she would apprise chief executive officer Dean Emerson of the situation before calling back with further instructions. After consulting with the company's attorney, Gregory Mair, Emerson instructed Snyder not to file a police report on defendant's behalf. Meanwhile, plaintiff sought advice from a friend at a different company, who told her to notify the police and to, in effect, "start a paper trail." Plaintiff then discussed the incident with Sylvester Payne, her "on and off" significant other, who served as the chairman of defendant's board of directors.

Plaintiff also communicated with Snyder about the incident by text message. In the text messages, plaintiff reasserted her concern and inquired about whether she should contact the police. Snyder informed plaintiff that Mair had advised against filing a police report on defendant's behalf. Plaintiff told Snyder that she had contacted Payne to discuss the incident, and Snyder responded by text message:

Linda, Sylvester is not an employee of SVRC. He is a board member. Please be very careful with sharing confidential information about employees. If you want to file a personal protection order you can do so, which may mean filing a police report, but that is not what was advised by our attorney. Let's talk when you get to work in the morning.

Plaintiff acknowledged that she was never discouraged by Snyder or anyone else from reporting LS's conduct to the police. Regardless, plaintiff never gave any indication that she was going to report the incident to the police, and she apparently never took any action to do so.

Emerson instructed Mair to investigate the incident. Mair spoke with plaintiff, as well as other employees who were present at the meeting with LS,

between September 22 and September 28, 2016. Defendant terminated LS's employment on October 3, 2016.

On October 4, 2016, plaintiff received notice that she was being permanently laid off from her position with defendant, effective October 6, 2016, for "budgetary and economic reasons." Plaintiff filed suit against defendant, claiming that defendant had violated MCL 15.362 of the WPA in two ways: (1) by retaliating against plaintiff when she was about to report LS's conduct to the police and (2) by retaliating against plaintiff when she reported LS's conduct to Mair. Plaintiff additionally claimed that defendant had unlawfully retaliated against her in violation of Michigan public policy. Defendant moved for summary disposition under MCR 2.116(C)(10), which the trial court denied. [*Rivera*, 327 Mich App at 451-453.]

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010). Summary disposition is proper under MCR 2.116(C)(10) if, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." "When reviewing a motion for summary disposition brought under MCR 2.116(C)(10), a court must examine the documentary evidence presented and, drawing all reasonable inferences in favor of the nonmoving party, determine whether a genuine issue of material fact exists." *Dextrom*, 287 Mich App at 415-416. This Court also reviews de novo questions of law. *Fraser Twp v Linwood-Bay Sportsman's Club*, 270 Mich App 289, 293; 715 NW2d 89 (2006).

## III. ANALYSIS

Plaintiff failed to establish a genuine issue of material fact regarding whether defendant instructed her not to report LS's conduct, and the trial court therefore erred by denying defendant's motion for summary disposition regarding her public-policy unlawful termination claim.

In the absence of a contract providing to the contrary, employment is usually terminable by the employer or the employee at any time, for any or no reason whatsoever. *McNeil v Charlevoix Co*, 484 Mich 69, 79; 772 NW2d 18 (2009); *Smith v Town & Country Props II, Inc*, ___ Mich App ___, ___; ___ NW2d ___ (2021), slip op at 4, 6. There is, however, a public-policy exception to this rule; an employer is not free to discharge an at-will employee when the reason for the discharge contravenes public policy. *Id.*; see also *Suchodolski*, 412 Mich at 695; *Kimmelman*, 278 Mich App at 572-573. Termination of at-will employment is typically proscribed by public policy in Michigan in three situations: "(1) 'adverse treatment of employees who act in accordance with a statutory right or duty,' (2) an employee's 'failure or refusal to violate a law in the course of employment,' or (3) an 'employee's exercise of a right conferred by a well-established legislative enactment.' " *Kimmelman v Heather Downs Mgt Ltd*, 278 Mich App 569, 573; 753 NW2d 265 (2008), quoting *Suchodolski v Mich Consol Gas Co*, 412 Mich 692, 695-696; 316 NW2d 710 (1982); see also *Smith*, ___ Mich App at ___, slip op at 6-7.

-3-

The "Supreme Court's enumeration of 'public policies' that might forbid termination of at-will employees was not phrased as if it was an exhaustive list." *Kimmelman*, 278 Mich App at 573. However, as this Court has recently reiterated, Michigan courts do not have

> unfettered discretion or authority to determine what may constitute sound public policy exceptions to the at-will employment doctrine. As observed in *Terrien v Zwit*, 467 Mich 56, 66-67; 648 NW2d 602 (2002):
>
>> In defining "public policy," it is clear to us that this term must be more than a different nomenclature for describing the personal preferences of individual judges, for the proper exercise of the judicial power is to determine from objective legal sources what public policy *is*, and not to simply assert what such policy *ought* to be on the basis of the subjective views of individual judges. . . .
>>
>> In identifying the boundaries of public policy, we believe that the focus of the judiciary must ultimately be upon the policies that, in fact, have been adopted by the public through our various legal processes, and are reflected in our state and federal constitutions, our statutes, and the common law. See *Twin City Pipe Line Co v Harding Glass Co*, 283 US 353, 357; 51 S Ct 476; 75 L Ed 1112 (1931). The public policy of Michigan is *not* merely the equivalent of the personal preferences of a majority of this Court; rather, such a policy must ultimately be clearly rooted in the law. There is no other proper means of ascertaining what constitutes our public policy.
>
> Consistent with this observation, the *Terrien* Court noted that as a general rule, making social policy is a job for the Legislature, not the courts, *id.* at 67, and found instructive the United States Supreme Court's mandate: " 'Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests. As the term "public policy" is vague, there must be found definite indications in the law of the sovereign to justify the invalidation of a contract as contrary to that policy.' " *Id.* at 68, quoting *Muschany v United States*, 324 US 49, 66; 65 S Ct 442; 89 L Ed 744 (1945). Thus, courts may only derive public policy from objective sources. *Kimmelman*[, 278 Mich App at 573]. [*Smith*, ___ Mich App at ___, slip op at 6-7, quoting *Landin v Healthsource Saginaw, Inc*, 305 Mich App 519, 524; 854 NW2d 152 (2014).]

The three circumstances recognized by the Supreme Court in *Suchodolski* for when public policy prohibits termination "entail an employee exercising a right guaranteed by law, executing a duty required by law, or refraining from violating the law." *Kimmelman*, 278 Mich App at 573. Although the Supreme Court's list of circumstances for when the public-policy exception applies is not an exhaustive list, neither this Court nor the Supreme Court has yet found "a situation meriting extension beyond the three circumstances detailed in *Suchodolski*." *Landin*, 305 Mich App at 526; see also *Smith*, ___ Mich App at ___, slip op at 9 (noting that where the "prevailing legal norms and legal theories" have not changed since the adoption of the public-policy exception

to at-will employment, extension of the public-policy exception to independent contractors "should come from the Legislature or the Supreme Court.").

In this case, plaintiff alleged that she engaged in activity protected by public policy "by attempting to report [LS's] actions to the police and refusing to conceal and/or compound [LS's] violations of the Michigan Anti-Terrorism Act." We conclude that plaintiff failed to establish a genuine issue of material fact regarding this claim.

Plaintiff has primarily argued that the basis for her public policy claim was her refusal to conceal LS's allegedly criminal conduct, and has cited *Pratt v Brown Machine Co*, 855 F2d 1225, 1236-1238 (CA 6, 1988), in support of her argument. In *Pratt*, the Sixth Circuit held that Michigan public policy prohibited an employer "from imposing as a condition of employment an agreement, express or implied, by an employee with knowledge of the commission of a crime to compound or conceal or not prosecute or not to give evidence concerning the commission of the crime." *Id.* at 1236.

*Pratt* is not binding on this Court. See *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004). However, its holding is consistent with our Supreme Court's statement that "[i]t is well settled that any contract, the consideration of which is to conceal a crime or stifle a prosecution, is necessarily repugnant to public policy, and that a contract whose consideration is contrary to public policy is void," *Case v Smith*, 107 Mich 416; 65 NW 279, 280 (1895), as well as with our Legislature's decision, through the compounding statute, MCL 750.149, to make it a crime for any person, having knowledge of an offense punishable with death or by imprisonment, to take money, any gratuity or reward, or any engagement, upon an agreement to compound or conceal the offense or not to prosecute. This caselaw and statute, which are objective sources, *Landin*, 305 Mich App at 526; see also *Terrien*, 467 Mich at 68 (indicating that public policy must be ascertained by reference to laws and legal precedents), reflect a public policy that persons may not enter into agreements to conceal a crime or stifle a criminal investigation. That public policy may be violated when an employer conditions an employee's continued employment on the employee's agreement to conceal or stifle an investigation into criminal conduct.

Viewing the evidence in the light most favorable to the plaintiff, however, it is clear that plaintiff failed to establish a genuine issue of material fact regarding whether defendant had instructed her not to disclose LS's conduct, much less that it had conditioned her employment on her agreement not to disclose the conduct and terminated her for refusing to enter into or abide by such an agreement. As this Court has previously stated, there was evidence that plaintiff, after she initially reported LS's conduct to defendant, disclosed the conduct to others. *Rivera*, 327 Mich App at 468 n 7. Plaintiff discussed LS's conduct with a friend, as well as with defendant's attorney, Mair. *Id.* at 451-452. Although plaintiff never reported LS's conduct to law enforcement, there was no evidence that defendant instructed her not to make such a report, or conditioned her continued employment on her not reporting LS's conduct to the police. Although plaintiff stated in an affidavit filed with the trial court that Mair had told her she should not file a police report, that statement was contradicted by her earlier deposition testimony, in which plaintiff clearly stated that she had based her claim that she was instructed not to call the police solely on text messages she had received from Deb Snyder. A plaintiff cannot create a factual issue by making assertions in an affidavit that are contrary to her earlier testimony at a deposition. *Mitan v Neiman Marcus*, 240 Mich App 679, 682; 613 NW2d 415 (2000). Therefore, plaintiff cannot

merely rely on her affidavit to create a genuine issue of material fact that she was instructed not to report LS's conduct. See *Dykes v Beaumont Hosp*, 246 Mich App 471, 480-481; 633 NW2d 440 (2001).

Regarding the text messages between plaintiff and Snyder, the trial court was provided with the following transcript of messages sent to and received by plaintiff immediately after the incident:

> *Snyder.* Trying to call attorney

> *Snyder.* Talked w Dean/talked w attorney/will fill u in tomorrow/document. Thx

> *Plaintiff.* Deb- I was advised we should immediately make out a police report!

> He is a hostile employee and that was a threat!

> *Snyder.* Dean talked w the attorney and he said no police report. The attorney will be at SVRC at 830 Wednesday morn to talk w [LS]

> *Plaintiff.* Uhhhh Deb…

> I don't feel comfortable not file [sic] police report. I prefer he [sic] authorities having a record of this incident. WEDNESDAY is a long time away to look over my shoulder wondering if he is lurking in the parking lot. He is an ex-marine.

> Eve confirmed [LS] has a key. All job coaches have a key to the building.

> Can I ask why the attorney said no police report?? I called Sylvester and told him about the [LS] situation and I asked him why a threat would not be documented with the police ASAP. He said he didn't know either??

> *Snyder.* Linda, Sylvester is not an employee of SVRC, he is a board member. Please be very careful with sharing confidential information about employees. If you want to file a personal protection order you can do so, which may mean filing a police report, but that is not what was advised by our attorney. Lets [sic] talk when you get to work in the morning.

> *Plaintiff.* Sylvester is my significant other. I am upset bcuz an ex-marine just threatened me. I am am [sic] employee too?? I am discussing my personal experience. [LS] looked right at me and said those things. So SVRC doesn't care about threats coming from a disgruntled angry employee that are directed at his supervisor and the director that told him about his 3 day suspension. It happen at work, but you are saying I should file PPO personally, and nothing with SVRC even though it took place at work…. Wow. That's all I can say.

The messages make clear that, although Snyder told plaintiff that Mair had advised against filing a police report, Snyder never told defendant not to file a report. In fact, Snyder specifically told plaintiff that she could request a personal protection order, which could require that she file a police report. At her deposition, plaintiff specifically acknowledged that Snyder did not tell her that she could not file a police report:

> *Q.* If we take Exhibit 4 and go to the second page, we have the complete – presumably the complete communication from Deb to you, right?

> *A.* Yes.

> * * *

> *Q.* And it says, "Dean talked with attorney and he said no police report. The attorney will be at SVRC at 8:30 Wednesday morning to talk with Lyle." That's what it says, doesn't it?

> *A.* Yes.

> * * *

> *Q.* Okay. What it really says is that Dean talked to SVRC's lawyer and he advised SVRC not to make a police report, is that what that says?

> *A.* Yes.

> * * *

> *Q.* . . . If you want to file a personal protection order, you can do so which may mean filing a police report, right?

> *A.* It's – yes, that's what's here.

> *Q.* Okay. It doesn't say don't file a police report, does it?

> *A.* No.

> *Q.* Okay. "But that is not what was advised by our attorney." She goes onto say that, right?

> *A.* Correct.

Plaintiff's own evidence shows that, while employees of defendant may have preferred that plaintiff not file a police report, defendant never implicitly or explicitly conditioned plaintiff's continued employment on her concealment of LS's unlawful activity. *Pratt*, 855 F2d at 1236; *Case*, 107 Mich at 416. Plaintiff has presented no other evidence in support of her public-policy claim, as we noted in our previous opinion. See *Rivera*, 327 Mich App at 468 n 7 ("We are not persuaded by plaintiff's contention that her public-policy claim is broader that her WPA claims

because it 'could include' a refusal to conceal LS's conduct from Payne or others who are not public bodies. First, not only is there no evidence that plaintiff 'refused to conceal' LS's conduct from Payne or others, there is instead evidence that plaintiff actually disclosed that conduct to them. There is, moreover, no evidence in the record that defendant directed plaintiff not to disclose LS's conduct to (or that plaintiff 'refused' to conceal it from) anyone. Finally, Snyder's caution to plaintiff (after she had disclosed information to Payne) to '[p]lease be very careful with sharing confidential information about employees' wholly fails to provide any basis for plaintiff's public-policy claim.").

For these reasons, we reverse the trial court's order denying defendant's motion for summary disposition on plaintiff's public-policy claim and remand for entry of an order granting summary disposition in favor of defendant on that claim. We do not retain jurisdiction.


/s/ Mark T. Boonstra
/s/ Michael J. Kelly
/s/ Deborah A. Servitto