*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RICO D. NEAL,

      Plaintiff-Appellant,

UNPUBLISHED
December 7, 2023

v

INGHAM COUNTY,

      Defendant-Appellee.

No. 363136
Ingham Circuit Court
LC No. 21-000049-CK

Before: HOOD, P.J., and JANSEN and FEENEY, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting summary disposition in favor of defendant under MCR 2.116(C)(10). We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was employed by defendant for several years as an Assistant Prosecuting Attorney before leaving that employment, pursuant to a voluntary resignation agreement ("the contract"), after certain "allegations" were made against him. The nature of those allegations is not clear from the record. The voluntary resignation agreement contained a nondisparagement provision. A few years later, plaintiff applied for employment in one of defendant's newly created Assistant Public Defender positions. Following plaintiff's interview, during which the allegations were discussed, the Chief Public Defender, Russel Church, investigated whether, as plaintiff claimed, plaintiff had not received due process following the allegations leading to his resignation. Church concluded that plaintiff had received due process. Church was concerned by the discrepancy between plaintiff's belief about the degree of due process he had received and the degree of due process Church concluded he had received, and Church was also concerned that he would expend "political capital" by hiring plaintiff. Thus, plaintiff was not hired as a public defender.

Plaintiff filed this action, alleging that the people with whom Church spoke violated the nondisparagement provision and caused him not to be hired. Plaintiff moved to amend his complaint on the basis of newly discovered evidence, namely, Church's deposition testimony that Church discussed plaintiff with county officials other than the county attorney, and that these people all disparaged plaintiff. Defendant opposed the motion as futile, and moved for summary

-1-

disposition, arguing that the county officials or employees supplied factual statements regarding plaintiff's resignation, which the nondisparagement clause does not prohibit, and that the county attorney's statements were privileged attorney-client communications and made internally only. The trial court concluded that the nondisparagement provision must have been intended to exempt internal communications between defendant's employees, and therefore granted defendant summary disposition, denied plaintiff's motion to amend as futile, and dismissed plaintiff's claim. Plaintiff now appeals.

## II. STANDARD OF REVIEW

A grant or denial of summary disposition is reviewed de novo. *Kandil-Elsayed v F & E Oil, Inc*, ___ Mich ___, ___; ___ NW2d ___ (2023) (Docket Nos. 162907 and 163430); slip op at 7. The trial court's order of dismissal did not identify a subrule under which summary disposition was granted, referring to "the reasons stated on the record." The trial court stated on the record that it was deciding the motion under MCR 2.116(C)(10), which provides that summary disposition is appropriate when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." The trial court must consider the evidence and pleadings in the light most favorable to the nonmoving party and without making any findings of fact. *Kandil-Elsayed*, ___ Mich at ___; slip op at 7. The moving party is entitled to judgment as a matter of law if reasonable minds cannot differ on an issue. *Id*. at ___; slip op at 7.

If the nonmoving party has the ultimate burden of proof, the nonmoving party must respond to a motion for summary disposition by setting forth specific facts and evidence demonstrating the existence of a question of material fact. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 7-8; 890 NW2d 344 (2016). A party opposing summary disposition as premature "must show that further discovery presents a fair likelihood of uncovering factual support for the party's position." *Meisner Law Group PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 723-724; 909 NW2d 890 (2017). "Mere speculation that additional discovery might produce evidentiary support is not sufficient." *Caron v Cranbrook Ed Community*, 298 Mich App 629, 646; 828 NW2d 99 (2012). "This Court also reviews de novo the proper interpretation of a contract as a question of law." *In re Estate of Hoppert*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 362694); slip op at 7.

## III. APPLICABILITY OF THE NONDISPARAGMENT CLAUSE TO INTERNAL COMMUNICATIONS

Plaintiff argues that the trial court erred by reading an unstated limitation on the nondisparagement provision into the voluntary resignation agreement, contrary to its plain language. Because the contract does not exempt disparaging statements to those made to persons that defendant employs, we agree.

The primary "goal in the interpretation of contracts is to honor the intent of the parties," which "is done by giving the plain and unambiguous words of a contract their plain and ordinary meaning." *Allen Park Retirees Ass'n, Inc v Allen Park*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket Nos. 357955 and 357956); slip op at 5 (quotation marks and citation omitted). "When a court interprets a contract, the entire contract must be read and construed as a whole." *In*

-2-

*re Estate of Hoppert*, ___ Mich App at ___; slip op at 7 (quotation marks and citation omitted). Words in a contract must be construed in the context of both the contract as a whole and any distinct provision within the contract where the word is used. See *Auto-Owners Ins Co v Seils*, 310 Mich App 132, 153; 871 NW2d 530 (2015). Undefined terms in a contract should generally be given their ordinary meaning. *Barton-Spencer v Farm Bureau Life Ins Co of Mich*, 500 Mich 32, 39; 892 NW2d 794 (2017). This Court generally consults a dictionary when a word is undefined. *Andrusz v Andrusz*, 320 Mich App 445, 454; 904 NW2d 636 (2017). Courts may "not read language into contracts" or "rewrite clear contractual language." *AFT v Michigan*, 334 Mich App 215, 236; 964 NW2d 113 (2020).

Here, the voluntary resignation agreement does not define what constitutes a "disparaging statement." For purposes of resolving this issue, however, the precise definition of "disparagement" is irrelevant. The only question relevant to this issue is whether there is an exception to the nondisparagement provision in the contract for internal communications. We conclude that there is not. The trial court reasoned that, reading the contract as a whole, the parties must have intended to permit an exception to the nondisparagement provision for internal communications, at least if plaintiff were to reapply for employment with defendant. We disagree.

The nondisparagement clause of the voluntary resignation agreement entered between plaintiff and defendant provided:

> In further consideration for this agreement, [plaintiff] will not directly disparage the Employer in any manner, nor will he encourage anyone else to do so either through direct or indirect means. The Employer agrees that the Prosecuting Attorney and the Employer's Commissioners, elected officials, managers, agents, and employees will not at any time make any disparaging statements concerning [plaintiff] or activities in connection with his employment.

"The commonly understood word 'any' generally casts a wide net and encompasses a wide range of things," including any quantity and "whatever or whichever it may be." *People v Lively*, 470 Mich 248, 253-254; 680 NW2d 878 (2004) (quotation marks and citation omitted). The word "any" is "unlimited in its scope." *Parker v Nationwide Mut Ins Co*, 188 Mich App 354, 356; 470 NW2d 416 (1991). The contract prohibits defendant's officials, managers, agents, and employees from making disparaging statements regarding plaintiff *at any time*. Therefore, the contract permits *no* exceptions. Furthermore, the contract does not prohibit *defendant* from making any disparaging statements; rather, the prohibition falls on the individuals within defendant. The plain language of the contract is unlimited in scope and therefore necessarily extends to internal communications made by employees, agents, officials, or managers. The trial court reasoned that the parties must have intended for the contract to have an unstated exception for internal communications in the event plaintiff reapplied for employment with defendant. However, nothing in the plain language of the contract itself supports such a conclusion. To the extent the trial court found that the contract permitted an exception for internal communications, it erred by reading language into the contract. Therefore, defendant is not entitled to judgment as a matter of law on the ground that the alleged communications were internal.

## IV. SUMMARY DISPOSITION

Although the trial court erred in concluding that the nondisparagement clause did not apply to internal communications, summary disposition in favor of defendant was nonetheless appropriate. See *In re Miller Minors*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 364195); slip op at 6 (this Court will affirm if the trial court arrived at the correct result, irrespective of the correctness of the trial court's reasoning).

The contract does not define what constitutes a "disparaging statement." Both parties rely on a definition provided by this Court in an unpublished opinion. In *Sohal v Mich State Univ Bd of Trustees*, unpublished per curiam opinion of the Court of Appeals, issued May 17, 2011 (Docket No. 295557), pp 5-6, this Court relied on the *American Heritage Dictionary* (4th ed), the *Random House Webster's College Dictionary* (2005), and caselaw from other jurisdictions for the conclusion that "disparagement" meant to speak of someone in a slighting, disrespectful, or belittling way; to reduce a person's esteem or rank, or to discredit or lower the estimation of a person. This Court declined to adopt a definition that would have required the statement to be false. *Sohal*, unpub op at 4. Consistent with *Sohal*, in *Endoscopy Corp of America v Kenaan*, unpublished per curiam opinion of the Court of Appeals, issued March 9, 2023 (Docket No. 359398), p 13, this Court relied on the *Merriam-Webster's Collegiate Dictionary* (2003) for the conclusion that "disparagement" meant deprecating indirectly, speaking slightingly about someone, lowering someone in rank or reputation, or degrading someone.

Unpublished opinions from this Court are not binding, but they may be considered as instructive or persuasive. *Centria Home Rehab, LLC v Philadelphia Indemnity Ins Co*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket Nos. 359371 and 359372); slip op at 8. Both parties rely on the definitions of disparagement set forth in *Sohal*. This Court is not bound to accept "a party's statement of law, or even the parties' stipulations on a point of law." *Kimmelman v Heather Downs Mgt Ltd*, 278 Mich App 569, 576; 753 NW2d 265 (2008). Nevertheless, the definitions in *Sohal* are consistent with the definitions set forth in *Endoscopy Corp*. They are also consistent with the principle that courts should refer to a dictionary and should afford undefined words their ordinary meanings.

The above definitions of "disparagement" clearly do not state or suggest that the truth of a statement is relevant to whether it is disparaging. In *Sohal*, unpub op at 4, this Court rejected a proposed definition of disparagement that would have made falsity a requirement. However, under some circumstances, truth may be a defense to a claim of disparagement. Specifically, statements consisting of facts already known to an organization's officials cannot constitute disparagement.

A person's "reputation" refers to how that person is regarded by other people or by the public. See *Merriam-Webster's Collegiate Dictionary* (11th ed). "Esteem" and "estimate" can both refer to a determination as to someone's or something's value. See *id*. "Rank" can refer to a person's "relative standing or position." *Id*. To "degrade" can mean "to lower in grade, rank, or status" or "to bring into low esteem or into disrepute." *Id*. All of these words connote some kind of external perspective or external regard for a person. To the extent "disparagement" encompasses these words, it refers to the effect or outcome of a communication. Significantly, knowledge possessed by an organization's employees, when acting with authority and in the scope of their duties, is imputed to the organization. *Upjohn Co v New Hampshire Ins Co*, 438 Mich

-4-

197, 213-215; 476 NW2d 392 (1991). Once the organization acquires such imputed knowledge, later changes in personnel do not affect that knowledge. *Gordon Sel-Way, Inc v Spence Bros, Inc*, 177 Mich App 116, 125; 440 NW2d 907 (1989), aff'd in part and rev'd in part on other grounds 438 Mich 488 (1991). Communication of *facts* known by one employee to another employee within the same organization regarding a person cannot have the effect of lowering that person's rank, estimation, esteem, or reputation because those facts were already known to the organization.

The word "slighting" means "characterized by disregard or disrespect." *Merriam-Webster's Collegiate Dictionary* (11th dd). "Belittle" means to "speak slightingly of." *Id*. "Disrespect" means "to show or express disrespect or contempt for." *Id*. To the extent "disparagement" encompasses these words, it refers to the manner or attitude of a communication. There is no reason why an internal communication between employees of an organization could not constitute disparagement if made in a disrespectful manner.

Although the trial court erroneously granted summary disposition on the ground that internal communications were exempt from the nondisparagement provision under the contract, the trial court arrived at the correct outcome because there is no question of fact regarding whether any of defendant's employees made statements that could constitute "disparagement."

First, the only truly *disputed* facts pertain to the substance of the telephone call during which Church informed plaintiff that Church would not be hiring plaintiff. Church testified that the call consisted of nothing more than telling plaintiff that Church could not offer plaintiff a position. Plaintiff testified that Church told plaintiff what Church had been told by Matt Nordfjord, County Attorney. For purposes of summary disposition, this Court must consider the evidence in the light most favorable to plaintiff and refrain from making findings of fact. See *Kandil-Elsayed*, ___ Mich at ___; slip op at 7.

Plaintiff asserts that there are questions of fact because certain information—particularly the identities of the other people to whom Church spoke and precisely what those people said—is unknown. However, most of those individuals *cannot* be known. Church testified that he no longer had any notes, and he did not recall whom he spoke to other than that they were not people from the Prosecutor's Office. Plaintiff offers only speculation that any of those people could be identified or that any of their communications could be discovered, which is insufficient to establish a question of fact or to survive summary disposition. *Meisner Law Group*, 321 Mich App at 723-724; *Caron*, 298 Mich App at 646.

Conceivably, Nordfjord, Sue Graham, and Teri Morton, employees of defendant, could be deposed. Church testified that he was uncertain whether he spoke to Morton or to Graham, and Morton averred that she did not speak with Church. Therefore, there is no basis for deposing Morton. Church was uncertain whether Graham told him anything about whether hiring plaintiff would be a political consideration, but either way, Graham told him nothing about plaintiff and instead suggested that Church talk to Nordfjord. Referring Church's inquiry to another person cannot constitute disparagement, and plaintiff offers only speculation that Graham might have said anything else. Finally, although Nordfjord could conceivably be deposed, doing so is unnecessary

because, at this stage of proceedings, this Court should accept plaintiff's representations of Nordfjord's statements to Church as true.[1]  See *Kandil-Elsayed*, ___ Mich at ___; slip op at 7.

As noted, Church testified that he talked with a number of people who advised him that it might be unwise to hire someone who had recently been terminated by another department. Church testified that those people had not necessarily been involved in the circumstances surrounding plaintiff's termination.  Church testified that "[e]verybody in the circle that I travel in in the Ingham County government had their opinions on the situation."  This indicates that the "scuttlebutt" about plaintiff was already well-known within the relevant departments of defendant. Indeed, Church was aware of the "scuttlebutt" and rumors regarding plaintiff despite having intentionally tried to avoid knowing anything about them.  Church testified that he still did not know the truth of the allegations against plaintiff.  Therefore, none of those people could have told Church any facts that Church did not already know.  Rather, they only conveyed their own opinions about the wisdom of hiring plaintiff on the basis of those already-known facts.  Church testified that none of them told him that he "shouldn't or couldn't" hire plaintiff, just that he "ought to think long and hard about it."

As such, there is no question of fact regarding whether any of those individuals disparaged plaintiff.  There is no evidence that the individuals spoke about plaintiff in a slighting, belittling, or disrespectful manner.  The fact that many individuals already harbored opinions about plaintiff shows that the estimation in which plaintiff was held was already established.  They only communicated that hiring someone with that level of estimation might have adverse consequences. Again, plaintiff points to nothing to suggest that any further details about those communications could be discovered.  Those individuals did not disparage plaintiff.

Finally, presuming plaintiff's recitation of the telephone call to be true, Nordfjord told Church that certain allegations had been made against plaintiff on multiple occasions and that Nordfjord believed defendant could bring an unspecified " 'case' " against plaintiff.  Plaintiff disputed the truthfulness of the allegations, but agreed that allegations were made against him on at least two occasions.  Knowledge of those allegations must be imputed to defendant, and the fact of at least one of those allegations was also generally already known to Church personally, as well as to many other individuals within defendant.  Nordfjord's communication to Church of those allegations could not have lowered plaintiff's reputation or estimation to defendant or to Church, and plaintiff does not allege that Nordfjord spoke of him in a slighting, belittling, or disrespectful manner.  Although the possibility of bringing a " 'case' " against plaintiff may not have been known by Church personally, it would, if true, be knowledge also imputed to defendant.  Such communications could not have constituted disparagement.

However, if the possibility of bringing a " 'case' " against plaintiff was false, such a statement could constitute disparagement, because it would indicate that plaintiff was an even greater potential liability than Church already believed.  Nevertheless, Church's testimony indicates that Church was not swayed by any such statement.  Church testified that the hiring decision was his alone.  He explained that his reasoning for the hiring decision was twofold.  First,

---

[1] Specifically, plaintiff's testimony that Church told him that Nordfjord, County Attorney, believed that defendant had a " 'case' " that could be brought against plaintiff.

he was persuaded that hiring plaintiff would be an expenditure of political capital. Second, Church believed that plaintiff's beliefs regarding the due process he received before his termination were at odds with the due process actually provided to plaintiff. Church testified that his line of inquiry was only into whether plaintiff had received due process before being terminated, and researching the truth of those allegations would have been an investigatory stage he never reached. Any statement by Nordfjord regarding the possibility of bringing a " 'case' " against plaintiff would have been directly relevant to the truth of the allegations against plaintiff. It would have been relevant to the line of inquiry that Church actually pursued only to the extent that it cast light on the investigations that defendant undertook.

There is no evidence that Church drew any conclusions regarding the truth of the allegations against plaintiff. Church testified that he based half of his hiring decision on a combination of plaintiff's own demeanor and Church's research into defendant's conduct, and that he based the other half of his hiring decision on the probable consequences of hiring plaintiff given the preestablished estimation of plaintiff on the basis of information that was already widely known. Presuming that Nordfjord made the alleged statement about bringing a " 'case' " against plaintiff, there is no basis to conclude that this statement had any effect on Church's eventual hiring decision. Therefore, even if there is a question of fact regarding that statement, it cannot be a *material* question of fact.

In conclusion, although the trial court erred in concluding that the nondisparagement clause did not apply to internal communications, plaintiff does not articulate how the known statements that were made about him were disparaging other than possibly one statement that had no effect on Church's ultimate hiring decision. Plaintiff offers nothing more than speculation that any other statements about him could be discoverable. Therefore, there is no outstanding question of material fact regarding whether any official or employee of defendant actually disparaged plaintiff. On this record, there is no evidence of any such disparagement, and summary disposition in favor of defendant was appropriate.

Affirmed.

/s/ Noah P. Hood
/s/ Kathleen Jansen
/s/ Kathleen A. Feeney

-7-